[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10773
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 15, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-00138-ODE-GGB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

VERNON A. ROBERTS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 15, 2012)

Before EDMONDSON, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Vernon Roberts appeals his convictions and sentences for one count of conspiring to commit tax fraud, in violation of 18 U.S.C. § 371, and eight counts of aiding and assisting the preparation and filing of false personal income tax returns, in violation of I.R.C. § 7206(2) and 18 U.S.C. § 2. Roberts (a former professional income tax preparer) and two co-conspirators (employees of Roberts's tax preparation company) solicited business from United States Virgin Islands ("USVI") residents, then filed fraudulent returns with the United States Internal Revenue Service ("IRS") on behalf of these USVI residents. The returns listed fake Georgia addresses, included false personal data, and claimed the earned income tax credit (EIC).[1]

Roberts argues that the district court (1) gave an erroneous jury instruction, erred in denying Roberts's motion for judgment of acquittal and motion for a new trial, and abused its discretion in denying his proposed jury instructions; (2) abused its discretion in admitting testimony under Federal Rule of Evidence 404(b) concerning Roberts's false statements and prior convictions; and (3) clearly erred in calculating the tax loss amount. As an initial matter, the government has moved to file a corrected brief, and that motion is GRANTED. The corrected brief

---

[1]The EIC is available to USVI residents who claim the EIC on their USVI tax returns. However, it can take years to receive tax refunds in the USVI, whereas refunds are often available within one or two days in the United States if the e-filing system is used.

has been considered in deciding this appeal. After careful review of the briefs and the record, we affirm the district court.

I.

Roberts argues that the district court's jury instructions—that only individuals who live in the United States, defined as the fifty states and the District of Columbia, may file tax returns with the IRS claiming the EIC—were in error, and he appeals the district court's denial of his motions for acquittal and a new trial that were based on this argument. We review the legal correctness of a jury instruction *de novo*. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). However, as long as jury instructions accurately reflect the law, district courts have broad discretion in formulating them; we will not reverse a conviction on the basis of a jury instruction "unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *Id*. (quotation omitted). We review the denial of a motion for acquittal *de novo*, *United States v. Evans*, 473 F.3d 1115, 1118 (11th Cir. 2006), and the denial of a motion for a new trial for abuse of discretion, *United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007).

The district court instructed the jury that under the U.S. Internal Revenue Code, "a person is only eligible to claim the Earned Income Tax Credit . . . if that

3

person's principal place of abode was in the United States, and when I say United States here, I mean the 50 states and the District of Columbia." He explained that a principal place of abode is a place where a person resides "for more than half of the year." Roberts contends that this is a misstatement of the law because USVI residents may (1) file in the United States and (2) claim the EIC on their U.S. returns.

Roberts's first argument relies on a convoluted reading of I.R.C. § 932. The text of Section 932 states that bona fide residents of the Virgin Islands "*shall* file an income tax return for the taxable year *with the Virgin Islands*" and successful payment to the USVI of all taxes owed will excuse USVI residents from U.S. tax liability. I.R.C. § 932(c)(2), (4) (emphasis added). Roberts argues that this language about residual liability to the United States indicates that USVI residents may select whether to pay taxes to the USVI or the United States. However, Roberts points to no authority to explain why a statute stating a conjunctive liability (USVI residents *shall* pay taxes to the USVI *and* also remain liable to the United States if this is not done), in which the liability to the USVI is primary, should be treated as disjunctive (USVI residents may choose whether to pay the USVI *or* the United States). The clear mandate of I.R.C. § 932(c) is that USVI

4

residents *shall* pay taxes to the USVI; there is no language about electing one's country of preference in which to pay.

Roberts then argues that USVI residents may claim the EIC in the United States. The EIC is a tax credit that was enacted "to reduce the disincentive to work caused by the imposition of Social Security taxes on earned income, to stimulate the economy by funneling funds to persons likely to spend the money immediately, and to provide relief for low-income families hurt by rising food and energy prices." *In re James*, 406 F.3d 1340, 1344 (11th Cir. 2005) (alteration, emphasis, and quotation omitted). It is available to individuals who have a principal place of abode in the United States for more than six months of the year. I.R.C. § 32(c)(1)(A)(ii)(I). "United States" is not specifically defined within Section 32. However, the general definitions section of the Internal Revenue Code states that "where not otherwise distinctly expressed or manifestly incompatible with the intent thereof . . . 'United States' when used in a geographical sense includes only the States and the District of Columbia." I.R.C. § 7701(a)(9). The district court correctly chose to apply this definition, as confirmed by a later IRS regulation that "United States" does not include the USVI for the purposes of the EIC residency requirement. *See* 26 C.F.R. § 1.932-1(g)(2)(iii)(A).

Roberts argues, however, that I.R.C. § 7651 ("Administration and Collection of Taxes in Possessions") should control the meaning of "United States" in the context of EIC eligibility. We disagree. Section 7651 is intended to facilitate collection of taxes in the U.S. possessions, and thus declares that "United States" shall be defined to include the U.S. possessions for the purposes of tax collection and enforcement. There is no reason to allow this limited-scope definition to trump the general-purpose definition of "United States." Furthermore, the jury instruction stated not that USVI residents may not claim the EIC—it is undisputed that they may claim it on USVI tax returns—but that USVI residents may not claim the EIC on a U.S. tax return. This is a correct statement of law, as the appropriate place for USVI residents to file returns and claim tax credits on these returns is the USVI. Because the district court properly instructed the jury in accordance with the law, we affirm the denial of Roberts's motions for a judgment of acquittal and for a new trial.

Roberts additionally argues that the district court improperly rejected his proposed jury instructions. We review the district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Klopf*, 423 F.3d 1228, 1241 (11th Cir. 2005). A court's refusal to give a defense instruction is reversible error if "(1) the requested instruction was a correct statement of the law,

6

(2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." *United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir. 2011) (citation and quotations omitted), *cert. denied*, 132 S. Ct. 333 (2011). We have reviewed Roberts's proposed jury instructions and find that some portions are incorrect statements of law, and the remainder of the instructions are either cumulative or unrelated to important issues at trial. The district court's refusal to give the proposed jury instructions was therefore not reversible error.

## II.

Next, Roberts argues that the district court erred by admitting testimony concerning his false statements on two applications to the IRS for an electronic filing identification number ("EFIN"). The IRS granted both applications, and Roberts later used his EFIN to file the tax returns at issue in this case. Because Roberts had incorrectly stated on the EFIN applications that he had never been convicted of a crime, the district court allowed the government to present evidence of his four prior convictions in order to demonstrate the falsity of his statement. Roberts contends that this was error because the false statements made on the

7

EFIN applications were not inextricably intertwined with the conspiracy, nor were they admissible under Federal Rule of Evidence 404(b).

When a defendant properly preserves his claim, we review the district court's rulings on the admission of evidence for an abuse of discretion. *United States v. Jimenez*, 224 F.3d 1243, 1249 (11th Cir. 2000). Even if there is an abuse of discretion, we will reverse an erroneous evidentiary ruling "only if the error was not harmless." *United States v. Bradley*, 644 F.3d 1213, 1270 (11th Cir. 2011) (alteration and citation omitted). "An error is harmless unless there is a reasonable likelihood that it affected the defendant's substantial rights." *Id.* (alteration and quotation omitted). We need not reverse a conviction if the evidentiary error "had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990).

The admission of evidence concerning uncharged criminal conduct is governed by Federal Rule of Evidence 404, which states that evidence of "other crimes, wrongs or acts is not admissible to prove the character of a person," but "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The structure of the rule creates a two-step

8

admissibility inquiry. First, an uncharged crime or bad act may be intrinsic to the case, and therefore outside the scope of Rule 404(b), if it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quotation omitted). Second, evidence regarding acts not part of the charged crimes but pertaining to the context, motive, and set-up of the crimes is properly admitted if it is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *Id.* (quotation omitted).

If the prior bad act or conviction is not intrinsic to the charged crime, Federal Rule of Evidence 404(b) will determine its admissibility. *United States v. Veltmann*, 6 F.3d 1483, 1498 (11th Cir. 1993). We apply a three-part test to determine whether a district court abused its discretion in admitting extrinsic evidence under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by its undue

prejudice and must meet the other requirements of Federal Rule of Evidence 403. *United States v. Matthews*, 431 F.3d 1296, 1310–11 (11th Cir. 2005) (per curiam). Evidence is excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Rule 403 is an "extraordinary remedy," and its major function is to exclude "matter of scant or cumulative probative force, dragged in by the heels for the sake of prejudicial effect." *United States v. Utter*, 97 F.3d 509, 514–515 (11th Cir. 1996) (quotations omitted).

The false statements made on the EFIN applications were inextricably intertwined as a necessary part of the conspiracy and offered to prove Roberts's intent, preparation, plan, and knowledge relevant to the charged crimes. "In every conspiracy case . . . a not guilty plea renders the defendant's intent a material issue . . . . Evidence of such extrinsic evidence as may be probative of a defendant's state of mind is admissible unless he affirmatively takes the issue of intent out of the case." *United States v. Roberts*, 619 F.2d 379, 383 (5th Cir. 1980)[2] (quotation omitted). Roberts pled not guilty and denied any involvement with the conspiracy, claiming that his e-filing of the false tax returns was by mistake or accident. The

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) we adopted as binding precedent all of the decisions of the Fifth Circuit handed down prior to October 1, 1981.

10

fact that he had previously submitted false information to the victim, the IRS, thus was relevant to prove his intent to defraud the IRS. Additionally, the government offered sufficient proof of the evidence, and the probative value of the evidence was not outweighed by undue prejudice. We find no abuse of discretion by the district court.

Moreover, any possible error by the district court was harmless, as the testimony of Roberts' co-conspirators, numerous taxpayers, and IRS agents supported the jury's guilty verdict. Accordingly, we affirm the district court's admission of evidence regarding Roberts's false statements on his EFIN applications and the corresponding misdemeanor convictions.

## III.

Finally, Roberts argues that the district court incorrectly calculated the tax loss used to determine his sentence and the restitution amount. He disputes the use of an intended-loss measure and claims that some of the tax refunds he submitted were not fraudulent and therefore should not have been included in the loss calculation. We review for clear error the district court's loss determination for purposes of sentencing. *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999). We also review for clear error the district court's finding of the

specific amount of restitution. *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007).

Tax offenses sentenced pursuant to U.S.S.G. § 2T4 are calculated using a base offense level resulting from the tax loss, as set out in the table contained in U.S.S.G. § 2T4.1. U.S.S.G. § 2T1.4(a)(1). Tax loss is defined according to the provisions of U.S.S.G. § 2T1.1. *Id.* § 2T1.4(a). U.S.S.G. § 2T1.1 states that "[i]f the offense involved tax evasion or a *fraudulent or false return*, statement, or other document, the tax loss is the *total amount of loss that was the object of the offense* (*i.e.*, the loss that would have resulted had the offense been successfully completed)." *Id.* § 2T1.1(c)(1) (emphases added). "If the offense involved improperly claiming a refund to which the claimant was not entitled, the tax loss is the amount of the claimed refund to which the claimant was not entitled." *Id.* § 2T1.1(c)(4).

Because Roberts filed fraudulent or false returns, the district court employed an intended-loss measure, in accordance with U.S.S.G. § 2T1.1(c)(1). However, Roberts argues that the use of the intended loss measure was clearly erroneous and cites the language of U.S.S.G. § 2T1.1(c)(4) in support of his position. Roberts's argument simply amounts to a protestation that the district court did not make its determinations in accord with U.S.S.G. § 2T1.1(c)(4). Roberts gives no

explanation regarding why U.S.S.G. § 2T1.1(c)(4) more appropriately applies to this case than U.S.S.G. § 2T1.1(c)(1), and offers no support for a finding of clear error. Nor does Roberts offer any evidence of legitimate returns submitted and properly refunded by the IRS. We therefore find no clear error in the district court's calculation of tax loss.

Roberts also argues that the restitution amount determined was in clear error because it was based upon the clearly erroneous loss calculation made at sentencing. The amount of restitution can be determined on the basis of evidence heard during trial, undisputed statements in the Presentence Investigation Report, or evidence presented at the sentencing hearing. *United States v. Saunders*, 318 F.3d 1257, 1271 n.22 (11th Cir. 2003). Because we find that the loss calculation at sentencing was not clearly erroneous, we therefore find no merit in Roberts's argument that the district court clearly erred in calculating the restitution amount.

**AFFIRMED.**